David R. Pierce, Esq.
Attorney ID No. #028971985
LINDABURY, McCORMICK, ESTABROOK & COOPER, P.C.
A Professional Corporation
53 Cardinal Drive
P.O. Box 2369
Westfield, New Jersey 07091
Attorneys for Plaintiffs
DIOP PRODUCTIONS LLC and CARONA DAVIS DIOP

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIOP PRODUCTIONS LLC and CARONA DAVIS DIOP, <br><br> Plaintiffs, <br><br> v. <br><br> MICAH PAYNE and ALLVIEW CINEMA AND PHOTOGRAPHY, <br><br> Defendants. | Civil Action No.: <br><br> **COMPLAINT** |

Plaintiffs, DIOP Productions LLC and Carona Davis Diop (collectively referred to as "Plaintiffs"), by way of Complaint against Defendants, Micah Payne and Allview Cinema and Photography (collectively referred to as "Defendants") state as follows.

### JURISDICTION AND VENUE

1.      This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States (17 U.S.C. § 101 et seq.). This Court has jurisdiction under 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338(a) (copyright).

2.      This Court has personal jurisdiction over the Defendants, and venue in this District is proper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a), in that the Defendants reside in this District, and the acts of infringement complained of herein occurred in this District.

## PARTIES

3.      Plaintiff, DIOP Productions LLC ("DPL") is a New Jersey Limited Liability Corporation with its principal place of business in Lebanon, New Jersey.

4.      Plaintiff, Carona Davis Diop ("Carona") is the sole member and principal of the production company DIOP Productions LLC.

5.      Upon information and belief, Defendant, Micah Payne is an individual residing at 90 Sky Manor Road, Pittstown, New Jersey 08867-4032.

6.      Upon information and belief, Defendant AllView Cinema and Photography is an alter ego used by Defendant Micah Payne for purposes of performing and promoting video and other services

## BACKGROUND

7.      Carona is author of a book entitled "The Opening" ("Subject Book").

8.      The Subject Book is an original work, which is copyrightable under Title 17 of the United States Code, to wit, the Copyright Act of 1976 as amended.

9.      As executive producer of the Film, Carona set out to engage its cast and crew.

10.     Carona retained Anthony Tucker ("Tucker") to shoot and edit the Film.

11.     Tucker accepted Carona's proposal to work as editor of the Film. Tucker also understood that he would not be financially compensated for his editorial services, unless the film was picked up by a media service provider or distributor.

12.     In or about October 2017, Carona started her own production company known as

2

DIOP Productions LLC for, *inter alia*, the purpose of developing a motion picture based on her Subject Book ("Film"). Carona licensed all rights to the Film to DPL.

## THE FIRST MEETING

13.     On or about January of 2018 ("First Meeting") Carona met with Payne to discuss Defendants' potential role as director of the Film.

14.     Defendants verbally agreed to render directorial services for the Film and understood that there would be no monetary compensation for providing its directorial services, unless the film was picked up by a media service provider or distributor.

15.     Defendants further understood that Carona, as principal of DIOP Productions LLC and executive producer of the Film, would retain creative control and ownership of the Film.

16.     Notwithstanding the foregoing, Defendants offered to help Carona with editing the Film.

17.     Carona conditionally accepted Defendants' offer to help with editing, provided that all footage would go directly to Carona as main editor of the Film.

18.     The parties shook hands at the end of the First Meeting.

## THE SECOND MEETING

19.     On or about February 2018, Carona, Tucker and Payne met at the Raritan Diner in Flemington New Jersey to discuss the Film ("Second Meeting").

20.     During this meeting Payne acknowledged that his primary role was to render directorial services in connection to the Film.

21.     Payne further acknowledged and understood that Carona and Tucker were to be the main editors of the Film.

3

## DEFENDANTS' SCHEME TO SABOTAGE THE FILM

22.     Filming ended on or about July 16, 2018.

23.     On the day that filming ended, Carona requested that Defendants provide her with the footage of the Film.

24.     In response to Carona's request, Payne stated that he would not release any footage from the Film to either Plaintiffs.

25.     Carona asked what Defendants meant, stating that the agreement from the beginning had been that Defendants would turn over all footage to Plaintiffs.

26.     Payne responded that he knew that was the agreement, but that he had changed his mind.

27.     On July 18, Carona again requested from Defendants a copy of the Film.  Once again responded that he was editing the Film but was busy with other projects and would not consider Carona's request.

28.     On July 21, 2018 Carona requested a copy of the Film to date from Defendants so she could begin editing the Film and create the trailer. Defendants responded that Defendants were still working on editing the Film and busy with other projects.

29.     On August 3, 2018, Carona yet again requested from Defendants a copy of the Film to which Payne responded that he was still editing the Film and busy.

30.     Since April of 2018, Defendants have been editing and/or using the Film without artistic input from the author/owner of the Film.

31.     In fact, on or about April 1, 2018, Defendants published on their Facebook page a cinematic shot from the Film.  A true copy of this Facebook post is attached hereto as Exhibit A.

32.     On or about April 22, 2018, Defendants published on their Facebook page actual

4

footage taken from the Film.

33.     Defendants never sought Plaintiffs' permission, consent, or license prior to publishing, sharing and disseminating footage from the Film.

34.     To date, Defendants have refused or otherwise failed to deliver footage from the Film to Plaintiffs.

35.     After a request by Carona to at least assist in the editing of the footage Payne stated that "I don't like working with others, it just slows me down and it's a pain in the ass."

36.     In or about May 2018 in a meeting with Payne and production assistant Anne Schmalizigan, Carona informed both parties that she was dealing with an illness and wanted to get the film done in a reasonable amount of time for fear of future physical limitations due to illness.

## COUNT I – DECLARATORY JUDGMENT

37.     Plaintiffs hereby reallege paragraphs 1-36 of the Complaint as if fully restated therein.

38.     An actual and justiciable controversy exists between the parties as to whether Defendants have any copyright ownership interest in the Film.

39.     The Film is a motion picture to which DPL owns the copyright as licensee of Carona, the author of the Film.

40.     Defendants' directorial services on the Film do not constitute a fixed expression, nor do they constitute authorship, within the meaning of the Copyright Act, 17 U.S.C. 101 §§ *et seq*.

41.     In the alternative, if Defendants' directorial services on the Film are deemed to constitute a fixed expression, or authorship, Defendants assigned any and all copyrightable

contributions in the Film to DPL.

42.     Plaintiffs have been damaged by Defendants' intentional actions.

43.     Plaintiffs have no adequate remedy at law.

44.     Plaintiffs are entitled to a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57, that Defendants have no copyright ownership interest in the Film.

## COUNT II – COPYRIGHT INFRINGEMENT

45.     Plaintiffs hereby reallege paragraphs 1-44 of the Complaint as if fully restated therein.

46.     At all relevant times hereto, Carona has been a citizen of the United States, created and wrote an original novel for purposes of creating a Film entitled "The Opening".

47.     The Film is based entirely upon material wholly original with Plaintiff, and of which Plaintiff is the author, and is copyrightable subject matter under the laws of the United States.

48.     At all times relevant hereto, Plaintiff has been and is still the sole owner of all rights, title and interest in and to the copyright of the Film, except as licensed solely to DPL for purposes of making the Film.

49.     With full knowledge of Plaintiffs' rights to the Film, Defendants infringed said copyright by publishing and distributing portions of Plaintiff's Film on Facebook.

50.     Plaintiffs requested that Defendants immediately deliver and return to them the footage from the Film in Defendants' possession.

51.     Defendants have otherwise refused and failed to return and/or deliver footage from the Film to Plaintiffs.

6

52.     All of Defendants' acts in editing the footage and permitting the footage to be published and/or viewed on Facebook were without permission, license or consent of Plaintiffs.

53.     By reason of Defendants' acts of copyright infringement as alleged above, Plaintiffs have suffered and will continue to suffer substantial damage to its business in the form of diversion of trade, loss of profits, and a dilution of the value of their rights, all in amounts which are not yet ascertainable.

54.     Unless restrained or enjoined, Defendants' acts of copyright infringement as alleged above will cause Plaintiffs irreparable injury.

55.     Defendants' infringement of Plaintiffs' copyright was committed willfully.

56.     Defendants' willful acts of copyright infringement justify the award of the maximum measure of statutory damages in the amount of one hundred fifty thousand dollars ($150,000) for each act of infringement of Plaintiffs' copyright, together with costs and attorneys' fees. Alternatively, Plaintiffs may elect to recover their actual damages incurred as a result of Defendants' infringement and any additional profits of Defendants attributable to the infringement, together with costs and attorneys' fees.

## COUNT III – COMMON LAW UNFAIR COMPETITION

57.     Plaintiffs hereby reallege paragraphs 1-56 of the Complaint as if fully restated therein.

58.     Upon information and belief, beginning on or about April 22, 2018, and continuing thereafter, Defendants, without the consent of Plaintiffs, produced and distributed footage from the Film.

59.     Defendants' production and distribution of this footage is likely to confuse and mislead viewers and consumers as to who is the owner and/or author of the Film.

7

60.     The aforementioned acts of Defendants constitute unfair competition with Plaintiffs.

61.     By reason of Defendants' acts of unfair competition as alleged above, Plaintiffs have suffered and will continue to suffer substantial damages to its business in the form of diversion of trade, loss of profits, and loss of goodwill, and damage to their reputation, all in amounts which are not yet fully ascertainable but which are estimated to be not less than two hundred fifty thousand dollars ($250,000).

62.     By reason of Defendants' acts of unfair competition as alleged above, Defendants are liable to Plaintiffs for the actual damages suffered by Plaintiffs as a result of said acts of unfair competition and any additional profits earned by Defendants as a result of said acts.

63.     Unless restrained and enjoined, Defendants' acts of unfair competition as alleged above will cause Plaintiff irreparable injury.

## COUNT IV - BREACH OF CONTRACT

64.     Plaintiffs hereby reallege paragraphs 1-63 of the Complaint as if fully restated therein.

65.     Plaintiffs and Defendants entered into a verbal agreement, whereby Defendants represented that they would render directorial services for the Film ("Agreement") in exchange for monetary consideration should the Film be picked up by a media provider or distributor. Defendants understood that if the Film was not picked up by a media provider or distributor, then Defendants would not be financially compensated for rendering directorial services for the Film.

66.     Defendants acknowledged that Carona is the executive producer of the Film.

67.     Defendants breached the Agreement by failing to deliver and/or return to Plaintiffs footage from the Film for Plaintiffs' use and editing and by publishing footage without

Plaintiffs' permission or authorization.

68.     By reason of Defendants' breach of contract as alleged above, Defendants are liable to Plaintiffs for the actual damages suffered by Plaintiffs as a result of said breach.

69.     In addition, Plaintiffs are entitled to the remedy of specific performance and injunctive relief compelling Defendants to turn over all footage from the Film to Plaintiffs.

## COUNT V – UNJUST ENRICHMENT

70.     Plaintiff hereby realleges paragraphs 1-69 of the Complaint as if fully restated therein.

71.     Upon information and belief, beginning on or about April 22, 2018, and continuing thereafter, Defendants, without the consent of Plaintiffs, produced and distributed to Facebook footage from the Film.

72.     Defendants' distribution and production of the Film on Facebook is likely to confuse and mislead viewers and consumers as to who is the owner of the Film.

73.     Defendants' continued retention of footage from the Film and failure to deliver said footage of the Film to Plaintiffs has resulted in Defendants unjustly enriching themselves.

74.     By reason of Defendants' acts as alleged above, Defendants have unjustly enriched itself to Plaintiffs' detriment.

75.     Plaintiffs are entitled to relief requiring Defendant to disgorge to Plaintiffs the value of the benefits unjustly retained by Defendants.

## COUNT VI –CONVERSION

76.     Plaintiffs hereby reallege paragraphs 1-74 of the Complaint as if fully restated therein.

9

77.     From March of 2018 to date, Defendants had in their possession video footage from the Film owned by Plaintiffs.

78.     As director of the Film, Defendants agreed to maintain the video footage of the Film for Plaintiffs' use.

79.     Since July of 2018, Plaintiffs requested that Defendants provide them with footage from the Film.

80.     Despite Plaintiffs' repeated and persistent demands, Defendants have failed and/or otherwise refused to return to Plaintiffs his footage from the Film.

81.     Defendants are responsible for the wrongful conversion of the footage, whether it occurred through theft, recklessness, negligence and/or mistake.

82.     These actions have wrongfully deprived Plaintiffs of the use and value of the missing footage for the Film.

83.     Defendants have no legal justification to retain footage from the Film.

84.     Defendants' wrongful actions were wanton and willful and taken with knowledge that injury would likely or probably result from their conduct, and/or with reckless indifference to the consequences of their actions and omissions.

85.     Plaintiffs are entitled to full compensation for the loss suffered as the direct and proximate result of Defendants' actions and all associated costs and expenses of recovery.

86.     Wherefore, Plaintiffs demands judgment against Defendants for all damages caused by such conversion together with costs, pre and post-judgment interest, and such other relief as the Court deems just and proper.

## COUNT VII – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

87.     Plaintiffs hereby reallege paragraphs 1-86 of the Complaint as if fully restated

therein.

88.    DPL is a limited liability company in the business of creating, producing, marketing and distribution of motion pictures.

89.    Part of producing, marketing and distributing motion pictures involves securing funding from third parties.

90.    Defendants refuses to return and/or deliver to Plaintiffs footage from the Film that belongs to Plaintiffs.

91.    Defendants' failure, despite Plaintiffs' requests, to provide Plaintiffs with footage from the Film has caused Plaintiffs to lose opportunities to present a film trailer to potential investors that had requested the Plaintiffs provide a trailer of the Film and therefore lose funding opportunities.

92.    Defendants' conduct and failure to provide footage from the Film was intended to and did interfere with Plaintiffs' relationship with prospective investors and funding opportunities.

93.    Defendants' have tortuously interfered and continues to tortuously interfere with Plaintiffs' prospective economic advantage. As a result of this tortious interference, Plaintiffs have suffered and will continue to suffer damages in the form of lost business with investors.

94.    But for this tortious interference, Plaintiffs have had a reasonable expectation that investors would invest and provide funding for the Film. Defendants' interference with Plaintiffs' potential investors and business relationships was and is intentional, in knowing violation of Plaintiffs' rights and without justification or excuse.

95.    Unless restrained and enjoined, Defendants will persist in its intentional, unjustified interference with Plaintiffs' business relationships, in full disregard of Plaintiffs'

rights, thereby causing immediate and irreparable harm. Plaintiffs have no adequate remedy at law because the damages suffered or yet to be suffered are and will be impossible to ascertain.

**WHEREFORE PLAINTIFFS REQUEST** judgment in their favor and against Defendants Micha Payne and AllView Cinema and Photography for the following relief:

      A.      An Order directing and compelling Defendants to immediately return and/or deliver to Plaintiffs all footage of the Film currently in their possession or their control, including all raw, unedited footage, any and all footage that has been edited by Defendants and all still images or frames captured during the filming;

      B.      A permanent injunction prohibiting from infringing upon Plaintiffs' copyright of the Film and the Subject Bool in any manner, and from publishing, selling, marketing or otherwise disposing of any copies of footage or any other image from or captured during the filming of Plaintiffs' Film;

      C.      An accounting for all gains, profits, and advantages derived by Defendants by their infringement of Plaintiffs' copyrights, and Defendants' unfair trade practices, unfair competition, and its unjust enrichment;

      D.      Disgorgement by Defendants of all profits of Defendants attributable to their infringement of the Film and Subject Book;

      E.      Compensatory damages consisting of actual damages or statutory damages as may be elected by Plaintiffs;

      F.      Punitive damages;

      G.      Attorneys' fees and costs;

      H.      Such other and further relief as this court deems just and proper.

## JURY DEMAND

I.      Plaintiffs demand trial by jury.


LINDABURY, MCCORMICK, ESTABROOK & COOPER, P.C.
Attorneys for Plaintiffs

By: _____
                              David R. Pierce, Esq.


DATED:      May 20, 2019


## RULE 11.2 CERTIFICATION

I, David Pierce, hereby certify that the matter in controversy is not the subject of any other action pending in any other court, or any other pending arbitration or administrative proceeding.


LINDABURY, MCCORMICK, ESTABROOK & COOPER, P.C.
Attorneys for Plaintiffs

By: _____
                              David R. Pierce, Esq.


DATED:      May 20, 2019